UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:25-cv-80268-GAYLES

**GARY R. RIESS**,

    Plaintiff,

v.

**PALM BEACH SHERIFF'S OFFICE**, *et al.*,

    Defendants.
_____/

## ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. § 1915(e)

**THIS CAUSE** is before the Court on *pro se* Plaintiff Gary R. Reiss's Complaint under the Civil Rights Act, 42 U.S.C. § 1983. [ECF No. 1]. Because Plaintiff has not paid the filing fee and has sought leave to proceed *in forma pauperis* ("IFP") [ECF No. 3], the screening provisions of 28 U.S.C. § 1915(e)(2)(B) apply. Under that statute, the Court shall dismiss a complaint if it determines the action is "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2)(B)(i)–(iii). For the following reasons, the Complaint is **DISMISSED WITHOUT PREJUDICE** as a shotgun pleading.

**I.   BACKGROUND**

Plaintiff is a pretrial detainee at the Palm Beach County Jail. In his Complaint, he alleges that on December 14, 2024, he was charged with fleeing and eluding by Deputy Zachary Hall. [ECF No. 1 at 4]. According to Plaintiff, Deputy Hall stated in his police report that he attempted to conduct a traffic stop on Plaintiff, but Plaintiff fled in his motorcycle. *Id.* at 4–5.

Plaintiff alleges that the next day, Deputy Hall surveilled his residence and located his motorcycle—even though it was "fully covered" and on "private property"—and then peeked into Plaintiff's bedroom window, violating Plaintiff's Fourth and Fourteenth Amendment rights. *Id*. at 5. Plaintiff alleges that Deputy Hall observed Plaintiff with a female companion in the bedroom and then called for backup. *Id*. at 6. Thereafter, fifteen deputies arrived, including two K-9 units. *Id*. Plaintiff alleges that the deputies were there to arrest him for only a misdemeanor charge of driving on a suspended license and for the fleeing and eluding charge of the day before. *Id*.

Plaintiff claims that the deputies then shut off the electricity to his residence to disable his security cameras. *Id*. Plaintiff claims that "nobody knocked or rang the doorbell" and that he became scared because he saw "shadows running outside his bedroom window[.]" *Id*. Plaintiff alleges he was initially unaware that police were outside his home and thought it might be a home invasion. *Id*. Plaintiff then opened his bathroom window and saw the officers and the dog. *Id*. Plaintiff told the officers he was coming out and asked them to remove the dog because he had PTSD from previous dog bites. *Id*. A deputy said, "ok," and Plaintiff prepared to exit the bathroom, "saying please, please remove the dog I am coming out." *Id*. at 7.

Plaintiff claims that before he exited the bathroom, the two K-9 deputies, Deputy Justin Olbert and Deputy Garret M. Bechtel, kicked in the bathroom door and "sicced" the dog on Plaintiff. *Id*. According to Plaintiff, he had complied with the deputies' commands before he was attacked. *Id*. at 9. Plaintiff alleges that the dog attacked him for approximately four to six minutes, and that during the attack, the deputies were laughing and playing a "tug of war" with the dog, pulling on its leash as it mauled Plaintiff's forearm. *Id*. at 7. Plaintiff claims that the dog bit him so hard that its tooth broke off into Plaintiff's forearm bone. *Id*. Plaintiff states that he "begged for mercy for them to please get the dog" off him and was then "punched [and] kicked in the head," knocking Plaintiff's tooth out and knocking him unconscious. *Id*. at 7–8.

Plaintiff alleges that he "woke up in the driveway handcuffed so hard that he begged for . . . Deputy Jerrie R. Obray to loosen the left handcuff," which was the arm the dog mauled. *Id*. at 8 (cleaned up). Plaintiff claims that another deputy, Deputy Sean Malynn, laughed at him, saying, "think next time you want to run[.]" *Id*.

Plaintiff states that he was then taken to the hospital, where he underwent emergency surgery to his left forearm and wrist, which included the surgical removal of the dog's tooth from his forearm bone, eighteen to twenty-five stiches, twenty-five metal staples, and a skin graft. *Id*. at 8–9. Plaintiff further alleges that as a result of the deputies' blows to his face and temple area, he suffered "degeneration and permanent impairment of vision." *Id*. at 8. Plaintiff claims he is "permanently disabled," his "predominant left hand does not properly function, two fingers do not properly open, [and] there is permanent nerve damage." *Id*. at 9 (cleaned up). Plaintiff avers that he remained in the hospital for almost a month due to his injuries. *Id*. at 10. He states that following his arrest, he was charged with failure to appear in connection with his suspended license for nonpayment of child support, fleeing and eluding, and resisting arrest without violence. *Id*. at 9.

Plaintiff claims that while he was in the hospital, his public defender sent her investigator to interview Plaintiff and take pictures of his injuries. *Id*. at 10. Plaintiff alleges that Sergeant White refused to allow the investigator to interview Plaintiff or take pictures of his injuries. *Id*. Plaintiff avers that this violated his due process rights and interfered with his access to the courts, as his attorney could not obtain evidence of the deputies' excessive use of force. *Id*.

Plaintiff alleges that after he was discharged from the hospital, around the first week of January, he was returned to the custody of the Palm Beach Sheriff's Office "with specific instructions for the medical department" at the jail. *Id*. According to Plaintiff, the jail's medical department failed to follow the orders of the surgeon in Plaintiff's discharge paperwork. *Id*. at 11. Plaintiff alleges that Dr. Alexandra, the jail's doctor, "failed to remove [the] staples and stiches in

the time ordered by the surgeon, leaving them in an extra 3–4 weeks, causing [his] skin to grow over [the] staples[.]" *Id*. (cleaned up). Plaintiff claims he advised his attorney about this issue and wrote grievances, which the jail never addressed. *Id*. Plaintiff alleges that the staples were finally removed, "but in retaliation Plaintiff's medication was stopped [and] he could not get it renewed." *Id*. Plaintiff states that he "had to beg wound care nurses to request a renewal of Tylenol/Advil." *Id*. He further claims that Dr. Alexandra has only seen him one time since he was discharged from the hospital, and that she refuses to give him anything stronger than Advil or review his discharge paperwork. *Id*.

Liberally construed, Plaintiff's Complaint asserts four causes of action: (1) excessive force claims based on the K-9 attack, the punches and kicks to his head, and the tight handcuffs; (2) failure to intervene claims against the deputies who failed to stop the attacks or remove the handcuffs; (3) a due process or access-to-the-courts claim[1] against Sergeant White for his refusal to allow the public defender's office to interview Plaintiff or take pictures of his injuries; and (4) a deliberate indifference to serious medical needs claim against Dr. Alexandra for failing to remove Plaintiff's staples and stiches or provide pain medication. Plaintiff names eleven Defendants: (1) Ric Bradshaw, the Palm Beach County Sheriff; (2) Deputy Hall; (3) Deputy Malynn; (4) Deputy Bechtel; (5) Deputy Tolbert; (6) Andrew Starr, "Deputy Supervisor"; (7) Deputy Obray; (8) Deputy Lamara; (9) Sergeant White; (10) Dr. Alexandra; and (11) Wellpath, the private entity that provides medical services to Palm Beach County inmates. *Id*. at 2–4. For relief, Plaintiff requests damages and injunctive relief requiring Wellpath to provide him with adequate medical treatment for his injuries. *Id*. at 13–14.

---

[1] It is unclear whether Plaintiff's allegations assert a procedural or substantive due process claim or an access-to-the-courts claim, but the Court need not resolve this issue at this time.

## II. LEGAL STANDARD

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). A pleading fails to state a claim for relief when it does not contain sufficient "factual matter (taken as true)" to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)."). A complaint need not contain detailed factual allegations, but it must provide as grounds for relief something more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal, a complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys" and construes them liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, the Court does not have "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## III. DISCUSSION

Plaintiff's allegations suggest possible constitutional violations, but his Complaint must be amended to remedy certain pleading deficiencies before the Court orders service on Defendants. Specifically, the Complaint is an impermissible "shotgun" pleading. Shotgun pleadings are complaints that violate either Federal Rule of Civil Procedure 8(a)(2), 10(b), or both. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." *Id*. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements." *Yeyille v. Miami Dade Cnty. Pub. Sch*., 643 F. App'x 882, 884 (11th Cir. 2016).

The Eleventh Circuit has identified four types of shotgun pleadings. *See Weiland*, 792 F.3d at 1321–23. The first type is a "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. at 1321. The second type of shotgun pleading is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. The third type is a complaint that does not separate into a different count each cause of action or claim for relief. *Id*. at 1322–23. The fourth type is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against." *Id*. at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*.

Here, Plaintiff's Complaint falls primarily into the second, third, and fourth categories of shotgun pleadings. Most notably, it is written as a continuous narrative and fails to state its claims in numbered paragraphs or separate its claims against each Defendant into a different count. *See Yeyille*, 643 F. App'x at 884–85 (stating that a complaint "written in narrative, diary-like form"

was a "quintessential shotgun pleading of the second type identified in *Weiland*."). Therefore, it is "impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

The Complaint also contains "vague[] and immaterial facts not obviously connected to any particular cause of action," making it difficult for the Court to decipher which facts are relevant to which claims. *Id*. at 1322. For instance, Plaintiff begins his Complaint by describing events preceding his December 15, 2024 arrest, including a traffic stop by Deputy Hall the day before the arrest, Plaintiff's interaction with Deputy Hall at a gas station, the fact that deputies shut off electricity to Plaintiff's residence, and how Deputies Hall and Malynn had previously "illegally interacted" with Plaintiff's female companion. *Id*. at 5–6. It is unclear how these events are relevant to Plaintiff's claims, or which claims they are intended to support. Moreover, Plaintiff claims that Deputy Hall's act of surveilling his residence violated his Fourth Amendment rights; but it is unclear whether Plaintiff is attempting to assert a separate claim for an illegal search, as his claims are not separated into counts and the allegations supporting the putative illegal search claim are vague.

Further, the Complaint generally "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. While Plaintiff alleges some specific bad actions by Dr. Alexandra and certain law enforcement officers, he fails to do the same for other defendants. Plaintiff asserts claims for excessive force, but at times the Complaint fails to specify which Defendants committed the alleged acts of excessive force. For example, Plaintiff alleges that he was "punched [and] kicked in the head," but he does not indicate which Defendants punched and kicked him. [ECF No. 1 at 7]. Plaintiff also asserts failure-to-

intervene claims but fails to identify which Defendants engaged in the acts or omissions underlying those claims. To state a § 1983 claim, Plaintiff must clearly specify which Defendant committed each specific act that forms the basis of that claim. *See LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) ("section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation"); *Brown v. Tallahasse Police Dep't*, 205 F. App'x 802 (11th Cir. 2006) (affirming dismissal of *pro se* complaint that "failed to name individual defendants and failed to articulate specific claims against those defendants.").

In sum, Plaintiff's Complaint is an impermissible shotgun pleading that fails to give Defendants or this Court enough clarity to discern Plaintiff's precise causes of action or the facts underlying those claims. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.") (quotations omitted)). Accordingly, the Complaint shall be dismissed without prejudice and with leave to amend.

### IV.  LEAVE TO AMEND

A *pro se* Plaintiff must be granted at least one opportunity to amend his Complaint if an amended complaint might state a claim upon which relief can be granted. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019). Plaintiff's Amended Complaint must comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's

>   jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
>   (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
>   (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

While Rule 8 allows a plaintiff considerable leeway in framing a complaint, the Eleventh Circuit has tightened the application of Rule 8 with respect to § 1983 cases in an effort to identify meritless claims. *See GJR Invs*., 132 F.3d at 1367 ("Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."). Accordingly, a § 1983 plaintiff must allege with specificity the facts which make out his claim. *See Wilson v. Strong,* 156 F.3d 1131, 1134 (11th Cir.1998) ("[T]he contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"). Factual detail in the pleadings is particularly necessary in cases involving qualified immunity, where the Court must determine whether a defendant's actions violated a clearly established right. *See GJR Invs*., 132 F.3d at 1367.

In addition, Plaintiff must separate each cause of action against each Defendant into a different count. The Amended Complaint must state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). To promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" *Id*. Plaintiff must clearly write the name of each Defendant who is a party to this action and specify which Defendant is responsible for each act or omission that forms the basis of his claims. *See Weiland*, 792 F.3d at 1323.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

2. On or before **April 7, 2025**, Plaintiff shall file an amended complaint, labeled **"Amended Complaint,"** that cures the deficiencies identified above. The Amended Complaint shall:

    a. Contain a short and plain statement of Plaintiff's claims against each named Defendant, a basis for federal jurisdiction, and a demand for judgment.

    b. Be either typed in 12-point font or larger and double-spaced or handwritten legibly.

    c. Be written on the § 1983 complaint form attached to this order.

3. The Amended Complaint must show **Case No. 25-cv-80268-GAYLES** so that it will be filed in this case.

4. The Clerk of Court is **DIRECTED** to mail Plaintiff a copy of the civil rights complaint form, together with this Order, at the address listed below.

5. This case is **CLOSED** for administrative purposes only.

**DONE AND ORDERED** in chambers at Miami, Florida, this 6th day of March, 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   **Gary R. Riess**, *pro se*
      0531835
      Palm Beach County Jail
      Inmate Mail/Parcels
      Post Office Box 24716
      West Palm Beach, FL 33416